**STATE of Utah, Plaintiff and Respondent,**

v.

**Jerry P. AUBLE, Defendant and Appellant.**

No. 860276.

Supreme Court of Utah.

May 4, 1988.

---

**936**

Stephen W. Farr, Steven M. Kaufman, David R. Hamilton, Ogden, for defendant and appellant.

David L. Wilkinson, Kimberly K. Hornak, Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant Jerry P. Auble was convicted of the second degree murder of his wife, Claudette Auble. He charges error in the admission of a hearsay statement, allegedly made by Claudette, reporting that Jerry had recently threatened to kill her. We reject his claim and affirm.

Claudette Auble was shot to death with a high-powered rifle in the couple's bedroom. The police initially treated the case as an accidental shooting but became suspicious when the state medical examiner determined that Claudette had been shot twice, once in the face at a range of eighteen to twenty-four inches and again in the back of the head at a range of one inch.

At the beginning of the trial, the State made an *in limine* motion for admission of a hearsay statement concerning Jerry's earlier threat to kill Claudette. The trial court preliminarily excluded the evidence, stating that it would reconsider if Jerry raised a self-defense argument. The State's evidence at trial was that Jerry and Claudette had been arguing for several months and that she had finally made definite plans to move out. The State's case suggested that the killing was intentional and that Jerry's motive for the killing was anger with Claudette over her leaving. Jerry took the stand and claimed that the shooting was not intentional. He testified that they had been arguing on the morning of the shooting. According to him, he came out of the shower, walked into their bedroom, and saw Claudette holding his hunting rifle, which had been stored in their garage. She came toward him, pushing the rifle at him and urging him to take it and kill himself, as he had previously threatened to do. He backed away in fear and then lunged forward and tried to take the rifle away from her. They struggled, and the rifle discharged once. She continued to hold the rifle and struggle, while he managed to cock the lever-action rifle again so that he could shoot himself after he got the gun away. Then the rifle discharged again.

After Jerry testified, the trial court then determined that Jerry's testimony could be the predicate for a self-defense claim and allowed one John Marsh, a long-time friend of Claudette's, to testify about earlier threats made by Jerry against Claudette. Marsh testified that one week before the shooting, Claudette told him that she had found an apartment and that in the past Jerry had threatened to kill himself if she moved out, but that this time "[h]e threatened to kill her if she moved out." This evidence was admitted over defense objections that it was inadmissible hearsay and unduly prejudicial. The trial court recognized the potential for unfair prejudice and gave a limiting instruction at the close of the trial, cautioning the jury not to consider the hearsay statement attributed to Claudette for the truth of the matter asserted, but only as it might reveal Claudette's state of mind at the time of her death.

On appeal, Jerry apparently concedes that the evidence was admissible under the state-of-mind exception to the hearsay rule, contained in Utah Rule of Evidence 803(3). He argues, however, that the evidence had such strong potential for unfair prejudice and such minimal probative value that it should have been excluded under Utah Rule of Evidence 403. Each of these points will be addressed.

In *State v. Wauneka*, 560 P.2d 1377 (Utah 1977), following the reasoning of *United States v. Brown*, 490 F.2d 758 (D.C. Cir.1973), we enunciated general rules on the admissibility of evidence of out-of-court statements made by a homicide victim who reports threats of death or serious bodily injury made by the defendant. *Wauneka* held that such hearsay evidence is generally inadmissible, but may be admitted under the state-of-mind exception to the hearsay rule [1] if it is not used to prove the truth of the matter asserted and if certain other criteria are met, specifically: (i) the evidence is probative of the decedent's state of mind at the time of the killing, and (ii) the decedent's state of mind has already been placed in issue by defense evidence or argument that the killing was (a) a suicide, (b) in self-defense, or (c) an accident to which the decedent contributed by acting as an aggressor. 560 P.2d at 1380. *Wauneka* also suggested that the evidence might be admissible if the identity of the killer is at issue. *Id.* In the present case, the trial court correctly followed *Wauneka*. Jerry's testimony was sufficient to raise issues of self-defense and accident, thus placing Claudette's state of mind in issue and making the testimony admissible under rule 803(3).

Jerry argues that even if *Wauneka* and rule 803(3) were satisfied, the evidence must still pass muster under rule 403 and it cannot do so. Rule 403 allows the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Utah

R.Evid. 403. We agree that evidence of threats which passes muster under rule 803(3) must also be scrutinized under rule 403. The policy underlying the strict admissibility standards of *Wauneka*, a policy which we reaffirm, is that great potential for unfair prejudice inheres in such evidence and it ought to be admitted only when it is directly relevant to a material issue raised by the defense. *See Wauneka*, 560 P.2d at 1381. The danger of such evidence is that the jury is likely to misuse it as evidence of the defendant's state of mind rather than the victim's. *See id.; United States v. Brown*, 490 F.2d at 766. It is improper to allow the jury to use such hearsay evidence to form conclusions about the defendant's intentions. And limiting instructions, which are a *per se* requirement, may not be sufficiently effective. *See Brown*, 490 F.2d at 766. That is exactly the sort of unfairness that rule 403 is designed to prevent.

In the present case, defense counsel sought exclusion under rule 403 of Marsh's testimony regarding the threat. The trial court denied the motion with little explanation in the record as to how it weighed the relevant factors, which makes our review of the rule 403 question more difficult. We prefer to have express findings in the record. *State v. Hackford*, 737 P.2d 200, 204 (Utah 1987). But even without such findings, we will "affirm if we can find some basis in the record for concluding that the trial court's action falls within the limits of permissible discretion under [r]ule 403." *Id.* (citing *State v. Patterson*, 656 P.2d 438, 438 (Utah 1982)).

Our examination of the record reveals no abuse of discretion. Claudette's state of mind was put directly into issue by Jerry's testimony, and the hearsay statement was highly probative on that issue. Based on that statement, the jury could reasonably have found that Claudette feared her husband might kill or seriously injure her and, therefore, she would not have confronted him aggressively and at-

---

1. At the time of *Wauneka*, the state-of-mind exception appeared in Utah Rule of Evidence 63(12), which for the purposes of this case did not differ substantially from the current rule 803(3).

tempted to force a loaded gun upon him in the midst of a heated argument. The witness who testified about the hearsay threat was a long-time acquaintance of Claudette's, and there was no evidence to suggest that his testimony was unreliable. Thus, the evidence had significant probative value, the same facts could not be reasonably proven by alternative means, and the potential for prejudice was reduced by a carefully drafted limiting instruction.[2] Under these circumstances, the trial court did not abuse its discretion in admitting the evidence under rule 403.

The conviction is affirmed.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, J., concurs in the result.

---

2. The limiting instruction read:

Statements of the deceased, Claudette Auble, have been allowed as evidence in this trial. You are instructed that this testimony is to be considered by you only in connection with evaluating the state of mind of *Claudette* Auble, and its effect, if any, on her subsequent conduct. You are not to consider this testimony to evaluate the state of mind or conduct of the defendant, Jerry Auble.

The instruction was given at the close of the trial. While such matters are within the trial court's discretion, the instruction might have been more effective if given contemporaneously with the testimony.