891 P.2d 251

**STATE of Arizona, Appellee,**

v.

**Israel ADAMS, Appellant.**

**No. 1 CA–CR 93–0711.**

Court of Appeals of Arizona,
Division 1, Department D.

March 7, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals

---

**384**

Section, Colleen L. French, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Brent E. Graham, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GRANT, Judge.

Israel Adams ("Defendant") appeals from his conviction of leaving the scene of a fatal or serious injury accident, a class 5 felony.

## FACTS AND PROCEDURAL HISTORY

On January 16, 1993, Phoenix Police Officer Jay Patterson was called to the area of 19th Avenue and Colter in Phoenix where he observed a dead male lying in the roadway's curb lane. The man was identified by name. Officer Patterson inquired of a crowd of six to ten onlookers whether anybody had seen or heard what happened. No one responded. Officer Patterson then recognized Defendant in the crowd and said hello to him. Later after the onlookers left, two men, Garrett and Sanchez, remained and provided Officer Patterson with a description of the driver. Garrett told Officer Patterson that he was driving home when he saw the victim's body lying in the street. When Garrett went around the victim, he almost hit him. He pulled his car over horizontally to the body in order to give assistance and activated his hazard (blinking) lights. As Garrett was about to exit his vehicle, he noticed another car coming up from behind. He looked at the car and then at the body and realized that there was going to be an impact and turned away. When he looked back, he could not see the body and thought it had disintegrated. He then noticed that it was under the vehicle that hit the body. The body had been dragged 130 feet.

The driver ("Defendant") pulled into a parking mall and stopped. As the Defendant walked towards the body, Garrett heard him say that he couldn't see the guy lying there. Garrett agreed. The Defendant was shocked and remorseful. Garrett ultimately told Sanchez that Defendant was the one who actually hit the victim. Garrett and Sanchez then told the officer what happened. Defendant was present when the paramedics were on the scene working on the victim. However, Defendant left the area prior to the conclusion of the investigation. At no time at the scene did Defendant indicate that he or his vehicle had been involved, even though he was present when the officers were asking questions.

After receiving the information that Defendant was involved in the accident, Officer Vazquez went to Defendant's home. When asked by police if the white Lincoln parked on the side of the house was his vehicle, Defendant responded, "I didn't kill anybody. That man was already dead." An examination of the vehicle yielded blood and hair evidence. Parts of the vehicle were also damaged.

In an interview Defendant admitted hitting something but thought it was trash or a box. He backed up to determine exactly what he hit and then recognized it was a human being. Defendant also admitted being present when the officers were asking questions at the scene. Defendant was sixty-two years old at the time and had no criminal record. He was retired on disability due to a heart condition and had suffered a serious heart attack in 1992. He stated that he did not remain at the scene because he was very nervous and because he did not have his heart medication (nitroglycerin) with him that he was supposed to take when he had heart trouble.

The victim died from blunt force injuries. Alcohol testing on his ocular fluid reflected a blood alcohol content of .40 at the time of his death.

The jury found Defendant guilty as charged of leaving the scene of a fatal accident. The trial court suspended imposition of sentence and placed Defendant on two years probation. He was ordered to pay $112 in felony penalty assessments and time payment fees.

## ISSUE

Defendant raises only one issue in this appeal:

Does Arizona's accident reporting statute (Ariz.Rev.Stat.Ann. ("A.R.S.") section 28–663) compel self-incrimination?

## DISCUSSION

A.R.S. section 28–663 states:

The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving and shall upon request exhibit his driver's license to the person struck or the driver or occupants of or person attending any vehicle collided with and shall render to any person injured in the accident reasonable assistance, including the making of arrangements for the carrying of the person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if the carrying is requested by the injured person. A person who fails to act as provided by this section is guilty of a class 3 misdemeanor.

A.R.S. section 28–661 states:

A. The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 28–663.

B. The driver who is involved in an accident resulting in death or serious physical injury as defined in section 13–105 and who fails to stop or to comply with the requirements of section 28–663 is guilty of a class 5 felony.

█ Defendant claims that A.R.S. section 28–663 as imposed through section 28–661 compels an individual to incriminate himself in violation of the Fifth Amendment to the United States Constitution and Article 2, Section 10 of the Arizona Constitution. The federal and Arizona privileges against self-incrimination are substantively identical. *State v. White*, 102 Ariz. 162, 163, 426 P.2d 796, 797 (1967). Therefore, the United States Supreme Court's interpretation of the scope of the privilege is binding on this court. Defendant moved for a directed verdict on this issue and the motion was denied.

The present issue was addressed by the United States Supreme Court in *California v. Byers*, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971). *Byers* held that the statutory requirement of the essentially neutral act of disclosing name and address was constitutionally permissible. At the time *Byers* was decided, the California Vehicle Code, section 20002(a)(1), required the driver of a vehicle involved in an accident to stop at the scene and report name and address to the other party involved. The only significant difference between the California and Arizona statutes is that the California Code makes a violation a misdemeanor, whereas violation of A.R.S. section 28–663 is a class 5 felony. We find that this distinction is immaterial.

*Byers* held that one reason the provisions of the California statute were not traditionally incriminating for purposes of Fifth Amendment analysis was that being involved in an accident is not always illegal. 402 U.S. at 431, 91 S.Ct. at 1539. There are valid regulatory reasons for requiring a motorist to stop and provide identification that have nothing to do with criminal investigation. Furthermore, the Court held that even if the reporting statute was incriminating in nature, the Court would not be willing to extend the Fifth Amendment to include such reporting provisions. *Id.* The Court pointed out that the California statute sets forth two essential requirements.

First, the person must stop at the scene of the accident. Stopping at the scene after being involved in an accident is less testimonial in nature than, for example, being required to stand in a police lineup,[1] or submitting to giving a blood sample [2]—procedures

1. *United States v. Wade*, 388 U.S. 218, 221–23, 87 S.Ct. 1926, 1929–30, 18 L.Ed.2d 1149 (1967).

2. *Schmerber v. California*, 384 U.S. 757, 764 and n. 8, 86 S.Ct. 1826, 1832 and n. 8, 16 L.Ed.2d 908 (1966) (holding further that the right against

that are not violative of the Fifth Amendment. *Id.*

Second, the Supreme Court held that disclosure of name and address is a neutral act that assists the state in regulating motor vehicles. *Id.* Therefore, because the statutory requirements did not compel Defendant to offer testimonial or incriminating statements within the scope of the Fifth Amendment, the Supreme Court held that the California stop and report law did not violate a Defendant's privilege against self-incrimination. *Id.* at 434, 91 S.Ct. at 1540–41.

■ Consequently, because we discern no significant difference between the California statute and the Arizona hit and run statute,

self-incrimination protects against evidence of a testimonial or communicative nature. *Id.* at 761, 86 S.Ct. at 1830–31).

we hold that A.R.S. section 28–663 does not violate Defendant's right against self-incrimination. We have also searched the record for fundamental error and have found none.

For the reasons stated, the conviction and sentence are affirmed.

GERBER, P.J., and McGREGOR, J., concur.